GARY M. RESTAINO
United States Attorney
District of Arizona

JACQUELINE SCHESNOL
Assistant U.S. Attorney
Arizona State Bar No. 016742
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: jacqueline.schesnol@usdoj.gov
Attorneys for Plaintiff

☐ FILED ☒ LODGED
Nov 19 2024
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

☒ FILED ☐ LODGED
Aug 26 2025
CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Christopher Michael Fiorentino,

Defendant.

No. CR 20-00642-PHX-GMS

**PLEA AGREEMENT**

Plaintiff, United States of America, and the defendant, CHRISTOPHER MICHAEL FIORENTINO, hereby agree to resolve this matter on the following terms and conditions:

**1. <u>PLEA</u>**

The defendant will plead guilty to Count 5 of the Superseding Indictment, charging the defendant with a violation of 18 United States Code § 924(a)(1)(A), False Statement During the Purchase of a Firearm, a Class D felony offense, and Count 22 of the Superseding Indictment, charging the defendant with a violation of 18 United States Code § 1343, Wire Fraud, a Class C felony offense.

**2. <u>MAXIMUM PENALTIES</u>**

a. A violation of 18 U.S.C. § 924(a)(1)(A), is punishable by a maximum fine of $250,000, a maximum term of imprisonment of five years, or both, and a term of

supervised release of up to three years. A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

b. A violation of 18 U.S.C. § 1343 is punishable by a maximum fine of $250,000, a maximum term of imprisonment of twenty (20) years, or both, and a term of supervised release of up to three years. A maximum term of probation is five years, including a minimum term of one year if probation is imposed.

c. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

d. The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

**3. <u>AGREEMENTS REGARDING SENTENCING</u>**

a. <u>Stipulation: Sentencing Cap</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall not exceed 24-months' incarceration. The sentences on Counts 5 and 22 shall run concurrently. This stipulated sentencing cap will not change based on departures considered under U.S.S.G.

§ 1B1.1(b). Nothing in this agreement shall preclude the defendant from moving for a downward departure, variance, or sentence below the cap, or the court from imposing a sentence below the cap.

b. Recommendation: Acceptance of Responsibility. Pursuant to Fed. R. Crim. P. 11(c)(1)(B), if the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

c. Assets and Financial Responsibility. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

d. Restitution. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution of $19,200 to the government relative to Count

22, and in no event more than $50,000, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

**4. <u>AGREEMENT TO DISMISS OR NOT TO PROSECUTE</u>**

a. Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss Counts 1-4, and 6-21 of the Superseding Indictment. The United States will not file any additional charges arising from the same conduct underlying the Superseding Indictment.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5. <u>COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION</u>**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used

against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6. WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7. DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8. <u>FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS</u>**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

b. The defendant has signed a civil settlement agreement regarding the distribution of seized assets, which is attached as Exhibit 1.

c. Defendant hereby waives and abandons all right, title, and interest in the items listed in the civil settlement agreement, and Defendant waives and releases any claim that Defendant might otherwise have otherwise made to seized assets.

d. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the firearms, including any such claim for fees and litigation cost.

e. Defendant agrees to hold the United States, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, or disposition, of assets listed in the and civil settlement agreement.

**9. ELEMENTS**

**False Statement During the Purchase of a Firearm (Count 5)**

On or about January 2, 2020, in the District of Arizona:

1. The defendant knowingly made a false statement or representation in connection with the purchase of a firearm;
2. The defendant made the false statement or representation to a licensed dealer, importer, manufacturer, or collector of firearms, as defined in Chapter 44, Title 18 United States Code; and
3. The statement pertained to information that the law requires the licensed dealer, importer, manufacturer, or collector to keep.

**Wire Fraud (Count 22)**

On or about between June 8, 2020, and October 6, 2020, in the District of Arizona:

1. The defendant knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;
2. The statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;
3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and
4. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

**False Statement During the Purchase of a Firearm (Count 5)**

On or about January 2, 2020, Defendant CHRISTOPHER MICHAEL FIORENTINO completed a Firearms Transaction Record, known as ATF Form 4473, in connection with the transfer of a firearm. The ATF Form 4473 was provided to Magnum Mike's, a Federal Firearms Licensee (FFL), in Arizona. Under the provisions of Chapter 44 of Title 18, United States Code, ATF Form 4473 contains information required to be kept by FFLs.

While completing ATF Form 4473, Defendant CHRISTOPHER MICHAEL FIORENTINO stated that he resided at an address on E. Via Buena Vista in Paradise Valley, Arizona. At the time of completing the ATF Form 4473, Defendant CHRISTOPHER MICHAEL FIORENTINO knew that he resided at a different address.

**Wire Fraud (Count 22)**

On or about June 8, 2020, on-line and from the District of Arizona, Defendant CHRISTOPHER MICHAEL FIORENTINO applied for Pandemic Unemployment Assistance ("PUA") benefits.

PUA was a federal program that provided financial assistance to those who were unable to work due to COVID-19 and do not qualify for traditional unemployment benefits. PUA benefits were available from February 2, 2020, through December 26, 2020. PUA provided a benefit ranging from $117 to $240 per week, for up to 39 weeks. PUA eligible individuals also received an additional $600 weekly in Federal Pandemic Unemployment Compensation for the weeks of March 29, 2020, through July 25, 2020. The PUA programs are hosted by Geographic Solutions Inc. ("GSI"), which are headquartered in Palm Harbor, Florida, and the GSI data center is in Sacramento, California.

When Defendant CHRISTOPHER MICHAEL FIORENTINO applied for PUA benefits, he listed "The Fiorentino Group, LLC" as his employer. The Fiorentino Group, LLC was not an actual employer of CHRISTOPHER MICHAEL FIORENTINO. Defendant CHRISTOPHER MICHAEL FIORENTINO submitted thirteen (13) false applications, on-line and from the District of Arizona, for a total of 30 weeks of PUA

benefits, for the time period of March 1, 2020, through September 26, 2020. On each of the thirteen (13) applications, Defendant CHRISTOPHER MICHAEL FIORENTINO reported $0 earnings during the time period of March 1, 2020, through September 26, 2020. These representations were false. Between June 9, 2020, and October 6, 2020, Defendant CHRISTOPHER MICHAEL FIORENTINO received $19,200 in PUA benefits. The PUA benefits were paid into his personal checking account ending in x4995 at Wells Fargo Bank.

Defendant CHRISTOPHER MICHAEL FIORENTINO submitted, and caused to be submitted, thirteen (13) separate false PUA benefit applications. These PUA benefit applications were submitted and transmitted by means of wire communication from the District of Arizona to a location outside the state of Arizona signals and sounds constituting online submissions of PUA benefits paid to Defendant CHRISTOPHER MICHAEL FIORENTINO.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner. I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

would impair my ability to fully understand the terms and conditions of this plea agreement.

Date 11/7/2024

CHRISTOPHER MICHAEL FIORENTINO
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

Date 11/7/2024

BRIAN RUSSO
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTIANO
United States Attorney
District of Arizona

JACQUELINE SCHESNOL Digitally signed by JACQUELINE SCHESNOL Date: 2024.11.08 11:55:09 -07'00'

Date

JACQUELINE SCHESNOL
Assistant U.S. Attorney

**ACCEPTANCE BY THE COURT**

8/26/2025
Date

G. Murray Snow
HONORABLE G. MURRAY SNOW
United States District Judge

**Exhibit 1**

IN RE:
The Seizure of Property from Michael Fiorentino

---

**SETTLEMENT AGREEMENT**

In October 2020, the Plaintiff United States of America seized property from Christopher Michael Fiorentino ("Fiorentino"). The property was seized pursuant to Court issued search warrants, citing violations of 18 U.S.C. Sections 924(n), 1956, and other federal crimes. The property seized from Fiorentino is identified as the "Subject Property" and detailed in Exhibit A to this agreement.

The United States of America and Fiorentino agree to resolve this matter with respect to the Subject Property. As the result of communication between the parties and considering the nature of the legal and factual issues involved, the amount in controversy, the expense of litigation, and length of time involved in the potential litigation, the parties agree to settle and compromise forfeiture of the Subject Property upon the following terms.

1. The United States will file an *in rem* civil forfeiture complaint against the property identified in Exhibit C to this agreement (the "*res*").

2. Fiorentino agrees not to file a claim in the civil forfeiture action, or to assist, consent to, or otherwise cause any third party to file a claim in the civil forfeiture action, or to contest the facts alleged in the civil forfeiture complaint. Fiorentino agrees to give up all right, title and interest in the *res*. Fiorentino further agrees not to contest the United States' forfeiture of the *res*, waives all deadlines under 18 U.S.C. § 983(a), and states that he is the sole owner of the *res*.

3. If any third party files a claim to the *res*, Fiorentino agrees to assist the United States in determining or contesting the validity of such claim, including providing declarations and/or testimony under oath as to the nature and extent of Fiorentino's interest in the *res* and his relationship, if any, with such third party claimant.

4. The United States agrees to return the property identified in Exhibit B to this agreement (the "Returned Property"). Fiorentino will complete all necessary paperwork and documentation required by the property custodian for release of the Returned Property, including identifying suitable accounts and/or cryptocurrency wallets for receipt of the Returned Property.

5. Fiorentino agrees to indemnify and release, forever discharge, and hold harmless the United States, the Department of Treasury, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Marshal Service and all officers, employees, agents, attorneys, contract employees, from any and all actions, causes of action, suits, proceedings, debts, judgment, damages, claims or demands whatsoever in law or equity which claimant, her heirs, successors or assignees ever had, now have or may have whether known or unknown, in connection with this seizure and detention of the Subject Property, including but not limited to any claim filed under 28 U.S.C. § 2412.

6. Pursuant to the terms of 28 U.S.C. § 2465, Fiorentino agrees that there was reasonable cause to seize the Subject Property and that he has not substantially prevailed as that term is defined by statute as the result of this Agreement.

7. Each party is responsible for their respective costs and attorneys' fees.

8. Fiorentino's forfeiture of the *res* pursuant to this Agreement does not negate or offset any tax obligation, fine, penalty, or other monetary obligation that Fiorentino owes to the United States beyond forfeiture of the Subject Property.

9. Federal law requires the Department of the Treasury and other disbursing officials to offset Federal payments to collect delinquent tax and non-tax debts owed to the United States, and to individual states (including past-due child support). If an offset is made to the return of property in Exhibit B to be made pursuant to this agreement, Fiorentino will receive a notification from the Department of the Treasury at the last address provided by Fiorentino to the governmental agency or entity to whom the offset payment is made. The terms of this Agreement do not affect any tax obligations fines,

penalties, or any other monetary obligations Fiorentino owes to the United States or to an individual state, other than as identified in this document. The United States makes no representations regarding any tax implications of this Agreement.

10. Each undersigned representation of the parties to this Agreement certifies that he or she is fully authorized to enter into this Agreement and each of the terms and conditions hereof, and to execute and legally bind such party to it. This Agreement may be executed in counterparts.

11. This Agreement constitutes the entire understanding of the parties with respect to its subject matter (i.e. the forfeiture and partial return of the Subject Property).

12. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Arizona. For purposes of construing this Agreement, the Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

_______________________ Date: 11/7/2024
BRIAN RUSSO
Counsel for Christopher Michael Fiorentino

_______________________ Date: 11/7/2024
CHRISTOPHER MICHAEL FIORENTINO

GARY M. RESTAINO
United States Attorney
District of Arizona

JACQUELINE SCHESNOL
Digitally signed by JACQUELINE SCHESNOL
Date: 2024.11.08 11:44:29 -07'00'
Date: ____________

JACQUELINE SCHESNOL
Assistant United States Attorney

**EXHIBIT A**

**Assets seized by the United States in 2020 (the Subject Property):**

- ACH transfer for Robinhood investment account, in the amount of $413,270.97 U.S. Currency, Account Name: Christopher Fiorentino, Account Number ending in x5583;
- Cryptocurrency presently consisting of 24.8739803 BTC (26.9999803 BTC were initially seized, 2.126 BTC have already been returned, therefore, 24.8739803 BTC remains) seized from Coinbase account opened under the name Christopher Fiorentino, Account Number ending in bc4b;
- U.S. currency, in the amount of $1,300.00;
- U.S. currency, in the amount of $40.00;
- U.S. currency, in the amount of $344.00;
- U.S. currency, in the amount of $10,860.00;
- Wells Fargo Bank Account Savings, in the amount of $54.65 U.S. currency, Account Number ending in 7807;
- Wells Fargo Checking Account, in the amount of $41,326.75 U.S. currency, Account Number ending in 4995;
- Wells Fargo Checking Account, in the amount of $45,510.36 U.S. currency, Account Number ending in 2785;
- 2018 Aston Martin DB11, VIN: SCFRMFAV7JGL03618;
- 2020 Mercedes-Benz G550, VIN: WDCYC6BJ2LX334023; and
- COINS, Quantity 14, consisting of 5 American Gold Eagle coins, 4 South African Gold Kugerrand coins, 3 Canadian Gold Maple Leaf coins, and 2 Austrian Gold Philharmonic coins;
- Vector Arms Mini Rifle CAL:9, serial number MC07659;
- Heckler and Koch MP5 CAL:40, serial number 12996;
- Heckler and Koch 53C, serial number 112940;
- Heckler and Koch MP5K, serial number 21-20168;
- Heckler and Koch SP5, serial number 271005537;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009360;

- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005530;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009348;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009366;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009047;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009355;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009354;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009361;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005531;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005533;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005532;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009365;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009353;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005539;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009363;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009364;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005538;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019551;
- Heckler & Koch Inc. USP9 COMPACT Pistol CAL:9, Serial Number 114001126;
- Sig Sauer (SIG-Arms) 93 Rifle CAL:762, Serial Number 3394;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005540;
- FNH USA, LLC FN57 Pistol CAL:57, Serial Number 386103948;
- Heckler & Koch Inc. Mark 23 Pistol CAL:45, Serial Number 23022289;
- Heckler & Koch Inc. MR 223 Pistol CAL:223, Serial Number 143021973;
- Heckler & Koch Inc. P7E Pistol CAL:9, Serial Number 1578912;
- Heckler & Koch Inc. SFP9 Pistol CAL:9, Serial Number 239002112;
- Heckler & Koch Inc. M8 Pistol CAL:9, Serial Number 16102317;
- Heckler & Koch Inc. 23 Pistol CAL:.45, Serial Number 23022290;
- Sig Sauer (Sig-Arms) Sig Sport 550 Rifle CAL:223, Serial Number SG423294;

- Heckler & Koch Inc. P8 Pistol CAL:.40, Serial Number 115008915;
- Action Arms Uzi Unknown Pistol CAL:9, Serial Number 19230;
- Glock Inc. 44 Pistol CAL:22, Serial Number AEHZ186;
- Heckler & Koch Inc. HK33k Rifle CAL:.223, Serial Number A129163;
- Unknown Uzi Pistol CAL:.45, Serial Number UP52352;
- Sig-Sauer Sig Sport 550 Rifle CAL:.223, Serial Number SG423293;
- Heckler & Koch Inc. MR 223 Rifle CAL:.223, Serial Number 143021901;
- Heckler & Koch Inc. G3K Rifle CAL:7.62, Serial Number A054482;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143021964;
- Ruger 10/22 Rifle CAL:22, Serial Number 35987087;
- Min Shan Factory Unknown Rifle CAL:7.62, Serial Number 101732;
- STEYR AUG Rifle CAL:9, Serial Number GSI138SA;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019552;
- Interarms M62/S Rifle CAL:7.62, Serial Number 135707;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019566;
- Heckler & Koch Inc. Unknown Pistol CAL:9x19, Serial Number 215009362;
- Intratec TEC22 Pistol CAL:22, Serial Number 079195;
- Adler Jager AP80 Rifle CAL:22, Serial Number 027814;
- Sig Sauer (Sig-Arms) Sport 550 Rifle CAL:223, Serial Number SG423292;
- Heckler & Koch Inc. SP5 Pistol CAL:9x19, Serial Number 271005534;
- Vector Arms, Inc. Unknown Rifle CAL:multi-cal, Serial Number 508412;
- Adler Jager AP85 Rifle CAL:22, Serial Number 2029;
- Heckler & Koch Inc. P8 Pistol CAL:40, Serial Number 115008914;
- Heckler & Koch Inc. MP5 Pistol CAL:40, Serial Number 17582;
- Heckler & Koch Inc. 416C Pistol CAL:556, Serial Number 171000002;
- Heckler & Koch Inc. 416C Pistol CAL:556, Serial Number 171000003;
- Colt Unknown Rifle CAL:.308, Serial Number MCC000820;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019549;

- Heckler & Koch Inc. HK94 Rifle CAL:9, Serial Number 557;
- Unknown Manufacturer IMI Uzi Pistol CAL:9, Serial Number UP19596;
- Heckler & Koch P8 A1 Pistol CAL:9, Serial Number 038;
- Heckler & Koch P8 A1 Pistol CAL:9, Serial Number 013;
- Heckler & Koch USP9 Compact Pistol CAL:9, Serial Number 27-000025;
- Heckler & Koch SP89 Pistol CAL:9, Serial Number 21-26625;
- Heckler & Koch SP89 Pistol CAL:9, Serial Number 21-26626;
- Heckler & Koch G3SG1 Rifle CAL:762, Serial Number A058394;
- Heckler & Koch SP5 Pistol CAL:9 Serial Number 271-000105;
- Glock Inc. 43X Pistol CAL:9, Serial Number BNUY334; and
- 10 Rounds Other Ammunition CAL:9.

**EXHIBIT B**

**Returned Property**:

- 50% of the seized ACH transfer for Robinhood investment account, in the amount of $206,635.48 ($413,270.97 was initially seized) U.S. Currency, Account Name: Christopher Fiorentino, Account Number ending in x5583;
- 60% of the seized cryptocurrency presently consisting of 24.8739803 BTC (26.9999803 BTC were initially seized, 2.126 BTC have already been returned, therefore, 24.8739803 BTC remains) seized from Coinbase account opened under the name Christopher Fiorentino, Account Number ending in bc4b, amounting to approximately 14.92438818 BTC;
- 50% of the seized U.S. currency, in the amount of $650.00 ($1,300.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $20.00 ($40.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $172.00 ($344.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $5,430 ($10,860.00 was initially seized);
- 50% of the seized Wells Fargo Bank Account Savings, in the amount of $27.32 ($54.65 was initially seized) U.S. currency, Account Number ending in 7807;
- 50% of the seized Wells Fargo Checking Account, in the amount of $20,663.37 ($41,326.75 was initially seized) U.S. currency, Account Number ending in 4995;
- 50% of the seized Wells Fargo Checking Account, in the amount of $22,755.18 ($45,510.36 was initially seized) U.S. currency, Account Number ending in 2785;
- 2018 Aston Martin DB11, VIN: SCFRMFAV7JGL03618;
- 2020 Mercedes-Benz G550, VIN: WDCYC6BJ2LX334023; and

- COINS, Quantity 14 consisting of 5 American Gold Eagle coins, 4 South African Gold Kugerrand coins, 3 Canadian Gold Maple Leaf coins, and 2 Austrian Gold Philharmonic coins.

## EXHIBIT C

**Assets forfeited to the United States (the *res*):**

- 50% of the seized ACH transfer for Robinhood investment account, in the amount of $206,635.48 ($413,270.97 was initially seized) U.S. Currency, Account Name: Christopher Fiorentino, Account Number ending in x5583;
- 40% of the seized cryptocurrency presently consisting of 24.8739803 BTC (26.9999803 BTC were initially seized, 2.126 BTC have already been returned, therefore, 24.8739803 BTC remains) seized from Coinbase account opened under the name Christopher Fiorentino, Account Number ending in bc4b, amounting to approximately 9.94959212 BTC;
- 50% of the seized U.S. currency, in the amount of $650.00 ($1,300.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $20.00 ($40.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $172.00 ($344.00 was initially seized);
- 50% of the seized U.S. currency, in the amount of $5,430 ($10,860.00 was initially seized);
- 50% of the seized Wells Fargo Bank Account Savings, in the amount of $27.32 ($54.65 was initially seized) U.S. currency, Account Number ending in 7807;
- 50% of the seized Wells Fargo Checking Account, in the amount of $20,663.37 ($41,326.75 was initially seized) U.S. currency, Account Number ending in 4995;
- 50% of the seized Wells Fargo Checking Account, in the amount of $22,755.18 ($45,510.36 was initially seized) U.S. currency, Account Number ending in 2785;
- Vector Arms Mini Rifle CAL:9, serial number MC07659;
- Heckler and Koch MP5 CAL:40, serial number 12996;
- Heckler and Koch 53C, serial number 112940;
- Heckler and Koch MP5K, serial number 21-20168;
- Heckler and Koch SP5, serial number 271005537;

- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009360;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005530;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009348;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009366;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009047;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009355;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009354;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009361;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005531;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005533;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005532;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009365;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009353;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005539;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009363;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 215009364;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005538;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019551;
- Heckler & Koch Inc. USP9 COMPACT Pistol CAL:9, Serial Number 114001126;
- Sig Sauer (SIG-Arms) 93 Rifle CAL:762, Serial Number 3394;
- Heckler & Koch Inc. SP5 K Pistol CAL:9, Serial Number 271005540;
- FNH USA, LLC FN57 Pistol CAL:57, Serial Number 386103948;
- Heckler & Koch Inc. Mark 23 Pistol CAL:45, Serial Number 23022289;
- Heckler & Koch Inc. MR 223 Pistol CAL:223, Serial Number 143021973;
- Heckler & Koch Inc. P7E Pistol CAL:9, Serial Number 1578912;
- Heckler & Koch Inc. SFP9 Pistol CAL:9, Serial Number 239002112;
- Heckler & Koch Inc. M8 Pistol CAL:9, Serial Number 16102317;
- Heckler & Koch Inc. 23 Pistol CAL:.45, Serial Number 23022290;

- Sig Sauer (Sig-Arms) Sig Sport 550 Rifle CAL:223, Serial Number SG423294;
- Heckler & Koch Inc. P8 Pistol CAL:.40, Serial Number 115008915;
- Action Arms Uzi Unknown Pistol CAL:9, Serial Number 19230;
- Glock Inc. 44 Pistol CAL:22, Serial Number AEHZ186;
- Heckler & Koch Inc. HK33k Rifle CAL:.223, Serial Number A129163;
- Unknown Uzi Pistol CAL:.45, Serial Number UP52352;
- Sig-Sauer Sig Sport 550 Rifle CAL:.223, Serial Number SG423293;
- Heckler & Koch Inc. MR 223 Rifle CAL:.223, Serial Number 143021901;
- Heckler & Koch Inc. G3K Rifle CAL:7.62, Serial Number A054482;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143021964;
- Ruger 10/22 Rifle CAL:22, Serial Number 35987087;
- Min Shan Factory Unknown Rifle CAL:7.62, Serial Number 101732;
- STEYR AUG Rifle CAL:9, Serial Number GSI138SA;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019552;
- Interarms M62/S Rifle CAL:7.62, Serial Number 135707;
- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019566;
- Heckler & Koch Inc. Unknown Pistol CAL:9x19, Serial Number 215009362;
- Intratec TEC22 Pistol CAL:22, Serial Number 079195;
- Adler Jager AP80 Rifle CAL:22, Serial Number 027814;
- Sig Sauer (Sig-Arms) Sport 550 Rifle CAL:223, Serial Number SG423292;
- Heckler & Koch Inc. SP5 Pistol CAL:9x19, Serial Number 271005534;
- Vector Arms, Inc. Unknown Rifle CAL:multi-cal, Serial Number 508412;
- Adler Jager AP85 Rifle CAL:22, Serial Number 2029;
- Heckler & Koch Inc. P8 Pistol CAL:40, Serial Number 115008914;
- Heckler & Koch Inc. MP5 Pistol CAL:40, Serial Number 17582;
- Heckler & Koch Inc. 416C Pistol CAL:556, Serial Number 171000002;
- Heckler & Koch Inc. 416C Pistol CAL:556, Serial Number 171000003;
- Colt Unknown Rifle CAL:.308, Serial Number MCC000820;

- Heckler & Koch Inc. MR 223 Rifle CAL:223, Serial Number 143019549;
- Heckler & Koch Inc. HK94 Rifle CAL:9, Serial Number 557;
- Unknown Manufacturer IMI Uzi Pistol CAL:9, Serial Number UP19596;
- Heckler & Koch P8 A1 Pistol CAL:9, Serial Number 038;
- Heckler & Koch P8 A1 Pistol CAL:9, Serial Number 013;
- Heckler & Koch USP9 Compact Pistol CAL:9, Serial Number 27-000025;
- Heckler & Koch SP89 Pistol CAL:9, Serial Number 21-26625;
- Heckler & Koch SP89 Pistol CAL:9, Serial Number 21-26626;
- Heckler & Koch G3SG1 Rifle CAL:762, Serial Number A058394;
- Heckler & Koch SP5 Pistol CAL:9 Serial Number 271-000105;
- Glock Inc. 43X Pistol CAL:9, Serial Number BNUY334; and
- 10 Rounds Other Ammunition CAL:9.