UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | No. 2:20-cr-00642-GMS-1 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Phoenix, Arizona |
| **Christopher Michael Fiorentino,** | ) | November 19, 2024 |
| | ) | 3:03 p.m. |
| Defendant. | ) | |

**BEFORE: THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE**

**TRANSCRIPT OF PROCEEDINGS**

**CHANGE OF PLEA HEARING**

**APPEARANCES:**

For the Government:
UNITED STATES ATTORNEY'S OFFICE
By: **Benjamin Samuel Goldberg, Esq.**
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408

For the Defendant:
LAW OFFICE OF BRIAN F. RUSSO
By: **Brian Fredrick Russo, Esq.**
10037 East Dynamite Road, Suite C101
Scottsdale, Arizona 85262

Transcriptionist:
**Cathy J. Taylor**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**P R O C E E D I N G S**

(Proceedings commence at 2:52 p.m.)

THE COURTROOM CLERK: Case Number CR-20-642, United States of America vs. Christopher Michael Fiorentino, before the Court for a change of plea hearing.

MR. GOLDBERG: Good afternoon, Your Honor. Ben Goldberg on behalf of the United States.

THE COURT: Good afternoon, Mr. Goldberg. You have your case agents with you here today?

MR. GOLDBERG: I do, seated right behind me.

THE COURT: Good afternoon.

UNIDENTIFIED VOICE: Good afternoon.

MR. RUSSO: Good afternoon, Your Honor. Brian Russo on behalf of Mr. Fiorentino. He is seated next to me and present.

THE COURT: Good afternoon, Mr. Russo. And you can remain seated.

MR. RUSSO: Thank you, Your Honor. Habit.

THE COURT: That's okay. If you -- if you feel the need to get up, you may.

MR. RUSSO: Thank you, Your Honor.

THE COURT: Good afternoon, Mr. Fior- -- Fiorentino.

THE DEFENDANT: Good afternoon.

THE COURT: Please raise right hand. We're going to swear you in and get started with your hearing.

(CHRISTOPHER MICHAEL FIORENTINO, a witness herein, was duly sworn or affirmed.)

THE COURT: You may put your hand down. Thank you, sir.

You've now been placed under oath. You must tell the truth when you're under oath. You can be convicted of perjury if you lie.

THE DEFENDANT: I understand.

THE COURT: The government has the right in a prosecution for perjury or false statements to use against you any of the statements that you give when you're under oath.

I am obliged to give you that advisement.

THE DEFENDANT: I understand.

THE COURT: Please state your name for the record.

THE DEFENDANT: Christopher Michael Fiorentino.

THE COURT: How old are you, sir?

THE DEFENDANT: 45.

THE COURT: And how far did you go in school?

THE DEFENDANT: College.

THE COURT: Do you have any problems at all, sir, with reading?

THE DEFENDANT: No. No, ma'am.

THE COURT: If at any time I say something to you today or I ask you something that you do not understand, please just tell me.

THE DEFENDANT: Of course.

THE COURT: The reason that you're here, sir, is because of the superseding indictment that was filed against you on -- on August 29th, 2023.

Your attorney indicated that you want to enter into a change of plea, so I'm going to ask you a lot of questions.

THE DEFENDANT: Okay.

THE COURT: All the questions that I ask you, though, from here on out you should be able to answer by simply saying either yes or no.

THE DEFENDANT: Okay.

THE COURT: Just yes or no. But if you're not able to do that for any reason, you can let me know.

Did you read through the Consent of Defendant Form with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you what it means?

THE DEFENDANT: Yes.

THE COURT: And then did you sign it?

THE DEFENDANT: I did.

THE COURT: Just yes or no.

THE DEFENDANT: Yes. Sorry.

THE COURT: The consent form, sir, tells me that you understand that you do have the right to do this change of plea hearing in front of the district judge who's assigned to your

case. Your district judge is Judge Snow. I am not Judge Snow. By signing that consent form, you're giving up your right to do your change of plea in front of Judge Snow, and you're agreeing instead to go ahead and do it in front of me. I am a magistrate judge. I am just a helper judge. I'm not the judge who is going to do the -- your sentencing.

Are you okay with appearing in front of me today to do this change of plea instead of Judge Snow?

THE DEFENDANT: Yes.

THE COURT: The Court accepts your consent.

Did you read through the superseding indictment with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you each of the crimes that you were charged with as well as the forfeiture allegation?

THE DEFENDANT: Yes.

THE COURT: Did he tell you what the government would have to prove in order for a jury to find you guilty of these crimes?

THE DEFENDANT: Yes.

THE COURT: Did you understand your lawyer when he explained all that to you, sir?

THE DEFENDANT: Yes.

THE COURT: So do you understand the charges that have

been filed against you?

THE DEFENDANT: Yes.

THE COURT: Did you read through this plea agreement with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you what it all means?

THE DEFENDANT: Yes.

THE COURT: Was he able to answer all the questions that you might have had about your plea agreement?

THE DEFENDANT: Yes.

THE COURT: After you read through this plea agreement with your attorney and he explained it all to you and he answered all your questions, did you understand the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Once you understood it, sir, did you sign it on page 11?

THE DEFENDANT: Yes.

THE COURT: Do you believe you understand your plea agreement?

THE DEFENDANT: Yes.

THE COURT: Did you read through the settlement agreement with your attorney?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you what it all means?

THE DEFENDANT: Yes.

THE COURT: Was he able to answer all the questions that you might have had about the settlement agreement?

THE DEFENDANT: Yes.

THE COURT: After you read through the settlement agreement with your lawyer and he explained it to you and answered all your questions, did you understand the settlement agreement?

THE DEFENDANT: Yes.

THE COURT: And once you understood the settlement agreement, did you sign it on page 3?

THE DEFENDANT: Yes.

THE COURT: Do you believe you understand the settlement agreement as well?

THE DEFENDANT: Yes.

THE COURT: Did you have enough time to talk to your attorney about the plea agreement and settlement agreement before coming here to talk with me?

THE DEFENDANT: Yes.

THE COURT: Are you comfortable, then, going forward with your change of plea today?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the representation you've received from your lawyer?

THE DEFENDANT: Yes.

THE COURT: Have you had any drugs, alcohol, or any kind of medication --

THE DEFENDANT: No.

THE COURT: -- in the last 48 hours?

THE DEFENDANT: No.

THE COURT: Are you feeling well today?

THE DEFENDANT: I feel great.

THE COURT: Have you ever been treated for or diagnosed with any sort of a mental illness?

THE DEFENDANT: No.

THE COURT: Counsel, any reason to believe that this defendant is not competent to proceed today?

From the government?

MR. GOLDBERG: No, Your Honor.

THE COURT: And the defense?

MR. RUSSO: No, Your Honor.

THE COURT: Sir, has anybody forced you, threatened you, or coerced you in any way to get you to enter into this plea agreement?

THE DEFENDANT: No.

THE COURT: Has anybody promised you anything other than what's contained in it to get you to enter into the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you understand that you have the

absolute right to persist in a plea of not guilty?

THE DEFENDANT: Yes.

THE COURT: So the plea agreement, sir, says you're pleading guilty to Counts 5 and Count 22. So Count 5 is false statement during the purchase of a firearm. It's a Class D felony. And Count 22 is wire fraud, as a Class C felony.

Is that your understanding of what it is that you're pleading guilty to?

THE DEFENDANT: Yes.

THE COURT: Are you voluntarily pleading guilty?

THE DEFENDANT: Yes.

THE COURT: After having consulted with your lawyer, do you believe that it's in your best interests to enter into your plea agreement?

THE DEFENDANT: Yes.

THE COURT: So the maximum sentence you can receive under the law for Count 5, which is false statement during the purchase of a firearm, is 5 years in the Bureau of Prisons followed by 3 years of supervised release. And if you fail to abide by your conditions of supervised release, you could be remanded to prison for a term of years for the violation, too. Your judge could decide to place you on probation for Count 5, and if he did, the minimum amount of time you can be put on probation for is 1 year, and the maximum amount of time is 5. In addition to the prison time and supervised release time or

probation, your judge can also order that you pay a maximum fine of $250,000. In addition to the fine, the judge can order that you pay a maximum special assessment of $100. And if there were any victims involved in your case, your judge could order that you pay restitution, which is money to the victims. And you'll be required to forfeit all the property that's listed in Exhibit C of your settlement agreement.

With regard to Count 22, the maximum sentence is 20 years in the Bureau of Prisons followed by 3 years of supervised release. And, again, if you fail to abide by your conditions of supervised release, you could be remanded to prison for a term of years for the violation on that count, too. The judge could also place you on probation for that count, and if he did, the minimum amount of time is 1 year, and the maximum amount -- amount of time is 5 years. In addition to the prison time and supervised release time or probation, that count carries a maximum fine of $250,000. In addition to the fine, the judge can order that you pay a maximum special assessment of $100 for that Count. And then the judge can also order that you pay restitution to any victims involved in the case. And you do have a restitution agreement in your plea agreement.

Counsel, did I correctly state the maximum sentence under the law for each count?

MR. GOLDBERG: Yes, Your Honor.

MR. RUSSO: Yes, Your Honor.

THE COURT: Sir, do you understand the maximum sentence you can receive under the law for each of these crimes that you're pleading guilty to?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Knowing it, sir, do you still wish to go forward today with your plea?

THE DEFENDANT: Yes.

THE COURT: Did your attorney explain to you the sentencing factors and the United States Sentencing Guidelines that your judge is going to consider at the time of your sentencing hearing?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you how those United States Sentencing Guidelines work by using this chart called a Federal Sentencing Table? It has the level of your offense on one side, your criminal history across the top, and range of sentence for crimes in the middle. You've got a copy in front of you.

Yes or no?

THE DEFENDANT: Yeah, I'm aware of it. Yes.

THE COURT: Did he explain it to you?

THE DEFENDANT: Yes.

THE COURT: Did he specifically talk to you, sir, about how those United States Sentencing Guidelines and

sentencing factors might be applied to you in your case?

THE DEFENDANT: Yes.

THE COURT: Did you understand your lawyer when he explained all that to you, sir?

THE DEFENDANT: Yes.

THE COURT: Did your lawyer explain to you the sentencing cap stipulation so that you understood it?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you the restitution stipulation, where you're specifically agreeing to pay full restitution of $19,200 to the government relative to Count 22, and in no event more than $50,000 to all the other victims directly or proximately harmed by your conduct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did he also explain to you the acceptance of responsibility recommendation that affects the level of your offense so that you understood it?

THE DEFENDANT: Yes.

THE COURT: Sir, you and the government have reached stipulations about what your sentence ought to be. A stipulation is an agreement. It's like a contract. Your judge will very carefully consider all the stipulations that you've reached with the government about what your sentence ought to be, but a stipulation that you've reached with the government isn't binding on Judge Snow. In other words, he is free to

reject it. If your judge rejects a stipulation, though, that you've reached with the government about what your sentence ought to be, then the judge is going to give you the chance to back out of your plea agreement.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The lawyers can also make recommendations to him about what your sentence ought to be. And he'll carefully consider the recommendations that are made as well. He's not bound by a recommendation either. He could reject it. If your judge rejects a recommendation that the lawyers make about what your sentence ought to be, he will not give you any opportunity to back out of your plea agreement.

Do you understand that important difference between a stipulation about your sentence and a recommendation about your --

THE DEFENDANT: Yes.

THE COURT: -- sentence?

Your district judge could sentence you to anything up to the maximum penalty that I told you that the law provides for each of these crimes. He must consider the United States Sentencing Guidelines and all the sentencing factors that are applicable under the law, and your judge will do that. He is free to reject them, though. He can impose any reasonable sentence up to the maximum sentence that I told you the law

provides for each of these counts.

Do you understand all that, sir?

THE DEFENDANT: Yes.

THE COURT: Knowing it, sir, do you still wish to go forward today with your plea?

THE DEFENDANT: Yes.

THE COURT: If you are currently on supervised release, sir, for some prior conviction, your guilty plea can establish a violation of your conditions of supervised release, and you could be remanded to prison on the crime for which you're serving supervised release.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you are currently on probation for some prior conviction, your guilty plea can also establish a violation of your conditions of probation. Your probation could get revoked, and you could be resentenced on that crime as well.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if you were to commit a new crime sometime in the future, this conviction will be used against you to increase your sentence on the new crime.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you are not a U.S. citizen, you can be deported or removed, you can be denied citizenship, and you could be denied reentry into the United States in the future.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And when you are convicted of a felony, and both counts are felonies, Count 5 is a Class D and Count 22 is a Class C felony, then you lose your right to vote and to serve on a jury.

Do you understand that as well?

THE DEFENDANT: Yes.

THE COURT: And you will be required to forfeit all of the property that is listed in Exhibit C to your settlement agreement.

Do you understand that as well?

That means you'll never see it again or have any interest in its value.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. So by pleading guilty, sir, you're giving up all your constitutional trial rights. So I'm going to go over with you what they all are so that you understand what it is that you're giving up.

Are you with me so far?

THE DEFENDANT: Yes.

THE COURT: You are presumed to be innocent of these charges. You have the right to deny these charges and go ahead and have a jury trial. You are entitled to be represented by counsel. Mr. Russo is your attorney. If at any point in time you are unable to afford his services, an attorney could be appointed to you at no cost to you.

You can't be found guilty unless the government can prove beyond a reasonable doubt that you committed the crimes that they charged you with. The government would try to do that by bringing in witnesses, who would come in, and they would testify under oath about what happened. Your attorney would confront and cross-examine all the witnesses called by the government in your presence. You also have the right to have your own witnesses come in to testify on your behalf. And people can be subpoenaed, which would make them come here to the courthouse at the time of your trial. So they'd be here for you. You could testify, too, if you wanted to, but you don't have to, because you do have the right to remain silent, and no one can use your right to remain silent against you in any way.

After all the witnesses have testified and all of the evidence has been presented to the jury, then the jury is going to decide whether or not you're guilty. If all 12 jurors unanimously find you guilty, then you can appeal that conviction to a higher court, which is called the Ninth Circuit

Court of Appeals.

Those are all your constitutional trial rights, sir. Do you understand them all?

THE DEFENDANT: I do, yes.

THE COURT: Do you understand, sir, that by pleading guilty, you are giving up your right to have a trial, and you're giving up all the rights that I just explained to you that come with it?

THE DEFENDANT: Yes.

THE COURT: Is that what you wish to do, sir?

THE DEFENDANT: Yes.

THE COURT: Sir, your plea agreement also provides that by pleading guilty instead of going to trial, you're giving up your right to present all the possible defenses that you might have to these charges. You're also giving up your right to appeal or to collaterally attack both your judgment and your sentence for any reason whatsoever by all the legal means that are available for you to do it, although you can still allege ineffective assistance of counsel and also prosecutorial misconduct.

Do you understand your possible defenses, your appeal, and your collateral attack rights, sir?

THE DEFENDANT: Yes.

THE COURT: Do you understand, sir, that by pleading guilty, you're giving all of those up as well?

THE DEFENDANT: Yes.

THE COURT: Is that what you wish to do, sir?

THE DEFENDANT: Yes.

THE COURT: I'm now going to go over with you the elements of the crimes that you're pleading guilty to, sir. And you can read along with me. I'm on page 7.

False statement during the purchase of a firearm, which is Count 5. For you, sir, this was on or about January 2nd, 2020, here in the District of Arizona, one, that you knowingly made a false statement or representation in connection with the purchase of a firearm; two, you made the false statement or representation to a licensed dealer, importer, manufacturer, or collector of firearms, as defined in Chapter 44, Title 18 of the United States Code; and, three, the statement pertained to information that the law requires the licensed dealer, importer, manufacturer, or collector to keep.

Do you understand the elements of false statement during the purchase of a firearm?

THE DEFENDANT: Yes.

THE COURT: And now we'll talk about wire fraud, which is the Count 22.

For you, sir, this was on or about between June 8 of 2020 and October 6th of 2020, here in the District of Arizona, one, you knowingly participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of

false or fraudulent pretenses, representations, or promises. Two, the statements made as a part of this scheme were material; that is, they had a natural tendency to influence or were capable of influencing a person to part with money or property. Three, you acted with the intent to defraud; that is, the intent to deceive and cheat. And, four, you used or caused to be used an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Do you understand the elements of the crime of wire fraud?

THE DEFENDANT: Yes.

THE COURT: The next thing I'm going to do, sir, is I'm going to read out loud to you the factual basis for your guilty plea, and that's on pages 8 and 9. After I've read these facts out loud to you, sir, I'm going to ask you if you heard me. So if you can't hear me, let me know.

THE DEFENDANT: I will.

THE COURT: And then I'm also going to ask you whether or not all of the facts that I've read out loud to you are true. And you can follow along with me. I'm reading right off of your document.

False statement during the purchase of a firearm, which is Count 5: On or about January 2nd, 2020, you completed a firearms transaction record known as ATF Form 4473 in connection with the transfer of a firearm. The ATF Form 4473

was provided to Magnum Mike's, a federal firearms licensee, FFL, in Arizona. Under the provisions of Chapter 44 of Title 18 of the United States Code, ATF Form 4473 contains information required to be kept by FFLs. While completing ATF Form 4473, you stated that you resided at an address on East Via Buena Vista, in Paradise Valley, Arizona. At the time of completing the ATF Form 4473, you knew that you resided at a different address.

Did you hear the facts that I read out loud to you for Count 5?

THE DEFENDANT: Yes.

THE COURT: Were all of the facts I read out loud to you true?

THE DEFENDANT: Yes.

THE COURT: And now we'll do Count 22, sir, which is wire fraud.

On or about June 8, 2020, online and from the District of Arizona, you applied for Pandemic Unemployment Assistance, PUA, benefits. PUA was a federal program that provided financial assistance to those who were unable to work due to COVID-19 and do not qualify for traditional unemployment benefits. PUA benefits were available from February 2nd, 2020, through December 26th, 2020. PUA provided a benefit ranging from 117 to $240 per week for up to 39 weeks. PUA eligible individuals also received an additional $600 weekly in Federal

Pandemic Unemployment Compensation for the weeks of March 29, 2020, through July 25th, 2020. The PUA programs are hosted by Geographic Solutions, Inc., GSI, which are headquartered in Palm Harbor, Florida, and the GSI data center is in Sacramento, California. When you applied for PUA benefits, you listed, quote, the Florintino Group, LLC, quote, close quote, as your employer.

The -- I'm sorry. I said Florintino. It's -- Fior- Fiorentino. Fiorentino Group, LLC, as your employer.

The Fiorentino Group, LLC, was not an actual employer of you. You submitted 13 false applications online and from the District of Arizona, for a total of 30 weeks of PUA benefits, for the time period of March 1, 2020, through September 26th, 2020. On each of the 13 applications you reported zero earnings during the time period of March 1st, 2020, through September 26th, 2020. These representations were false. Between June 9, 2020, and October 6th, 2020, you received $19,200 in PUA benefits. The PUA benefits were paid into your personal checking account ending in x4995 at Wells Fargo Bank.

You submitted and caused to be submitted 13 separate false PUA benefit applications. These PUA benefit applications were submitted and transmitted by means of wire communication from the District of Arizona to a location outside the state of Arizona signals and sounds constituting online submissions of

PUA benefits paid to you.

You shall swear under oath to the accuracy of these statements, and if you should not called upon to testify about this matter in the future, any intentional material inconsistencies in your testimony may be subject -- may subject you to additional penalties for perjury and false swearing, which may be enforced by the United States under the agreement.

Did you hear all the facts I read out loud to you with regard to Count 22, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Were all of the facts I read out loud to you true?

THE DEFENDANT: Yes.

THE COURT: Anything to add or change with regard to the factual basis from the government today?

MR. GOLDBERG: No, Your Honor. Thank you.

THE COURT: You're welcome.

Would the government be able to prove its case beyond a reasonable doubt were it to proceed to a jury trial?

MR. GOLDBERG: It could, Your Honor.

THE COURT: Anything to add or change on any of the facts from the defense?

MR. RUSSO: Thank you. No, Your Honor.

THE COURT: Mr. Fiorentino, did your lawyer give you his best estimate about what your sentence might be? Most

lawyers do.

THE DEFENDANT: Yes.

THE COURT: So it's important that you understand that Judge Snow doesn't have to sentence you to whatever your lawyer's very best estimate might have been. And if the judge doesn't, that is not a grounds for you to appeal or collaterally attack your judgment or your sentence.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions, sir, about the plea agreement? Now's the time to ask me if you do.

THE DEFENDANT: No, I don't.

THE COURT: Have you understood everything I've said to you and asked you today?

THE DEFENDANT: Absolutely. Yes.

THE COURT: Do you still want to go forward, sir, with your plea?

THE DEFENDANT: Yes.

THE COURT: Then with regard to Count 5 of the superseding indictment, to the charge of false statement during the purchase of a firearm, a Class D felony, in violation of Title 18 of the United States Code Section 924(a)(1)(A), how do you plead, sir? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: With regard to Count 22 of the superseding

indictment, to the charge of wire fraud, a Class C felony, in violation of Title 18 of the United States Code Section 1343, how do you plead, sir? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Any legal cause not to make findings today?

MR. GOLDBERG: No, Your Honor.

MR. RUSSO: No, Your Honor.

THE COURT: The Court does find that there is a factual basis for the defendant's pleas. He's entered his pleas knowingly, intelligently, and voluntarily, and he's competent to do so.

So, sir, it's ordered recommending that your plea is to be accepted by your district judge. It's ordered that a presentence report be prepared. And you've -- your firm trial date that was scheduled for January 7, 2025, is hereby vacated. You now have a sentencing date, sir. It's going to be on February 10th.

THE DEFENDANT: Okay.

THE COURT: February 10, 2025, at 1:30. Your judge, sir, is Judge Snow. And he's going to be upstairs. He's in Courtroom 602.

THE DEFENDANT: You're going to write that on there?

THE COURT: Is there anything further from the government today?

MR. GOLDBERG: No, Your Honor. Thank you.

THE COURT: You're welcome.

Is there anything further from the defense?

MR. RUSSO: Thank you. No, Your Honor.

THE COURT: You're -- you're all welcome.

Sir, you are released on your previously ordered conditions of release. Between now and the time that you see Judge Snow, it's very important that you continue to do everything that you've been ordered to do on your conditions of release to show the judge how well you can do in the community.

Do you understand?

THE DEFENDANT: Of course. Yes.

THE COURT: All right. The hearing is closed?

MR. GOLDBERG: Thank you, Your Honor.

MR. RUSSO: Thank you, Your Honor.

THE COURT: You're welcome.

(Proceedings conclude at 3:28 p.m.)

---oOo---

**C E R T I F I C A T E**

I, CATHY J. TAYLOR, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED at Phoenix, Arizona, this 22nd day of August, 2025.

/s/Cathy J. Taylor
Cathy J. Taylor